# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMI WANITA C., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) Case No. 18-CV-647-JFJ |
| v. | ) |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

## OPINION AND ORDER

Plaintiff Tami Wanita C. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotations omitted). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's

findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and ALJ's Decision

Plaintiff, then a 39-year-old female, applied for Title XVI benefits on October 8, 2015, alleging a disability onset date of June 23, 2015. R. 161-169.[1] Plaintiff claimed she was unable to work due to fibromyalgia and thoracic outlet syndrome. R. 184. Plaintiff's claim for benefits was denied initially on January 27, 2016, and on reconsideration on March 23, 2016. R. 66-75; 76-87. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held the hearing on September 11, 2017. The ALJ then issued a decision on December 5, 2017, denying benefits and finding Plaintiff not disabled. The Appeals Council denied review, and Plaintiff appealed.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of October 8, 2015. R. 12. The ALJ found that Plaintiff had the following severe impairments: thoracic outlet syndrome; degenerative disc disease of the cervical and lumbar spine; and fibromyalgia. Based on the evidence, the ALJ determined that Plaintiff's migraines, history of Chiari I decompression, "s/p left shoulder surgery," history of ulnar nerve reconstruction, and anxiety were all non-severe impairments which caused Plaintiff "no more than mild functional limitations." R. 13. At step three, the ALJ found that Plaintiff did not have an impairment or

---

[1] Although Plaintiff alleged disability beginning June 23, 2015, Title XVI benefits are not payable until the month after the month the application is filed. *See* R. 11; 20 C.F.R. § 416.335.

combination of impairments of such severity to result in listing-level impairments. Prior to making a step-four finding and after "careful consideration of the entire record," the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 416.967(a) except she is able to lift or carry up to 5 pounds frequently and 10 pounds occasionally. She is able to sit for up to 6 hours in an 8-hour workday. She can stand and/or walk up to 2 hours in an 8-hour workday. The job should not involve pushing or pulling. The claimant is able to occasionally climb ramps or stairs or stoop, but she should never kneel, crouch or crawl. The claimant should never climb ladders, ropes or scaffolds or be exposed to unprotected heights or hazardous moving mechanical parts. She is able to occasionally reach overhead.

R. 15. At step four, the ALJ found Plaintiff unable to perform any of her past relevant work because it exceeded her RFC. R. 20. Plaintiff was 39 years old on her application date, which is defined as a younger individual. Based on testimony from the vocational expert, the ALJ found at step five that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Accordingly, the ALJ concluded Plaintiff was not disabled.

## III.    Issues and Analysis

Plaintiff raises two issues on appeal: (1) the ALJ failed to properly consider Plaintiff's impairments of Chiari I malformation and migraine headaches in formulating Plaintiff's RFC;[2] and (2) the ALJ failed to properly consider Plaintiff's subjective complaints.

### A.    ALJ Properly Considered All of Plaintiff's Impairments in Formulating RFC

Plaintiff argues that the ALJ failed to consider the combined effect of all of Plaintiff's medically determinable impairments in formulating Plaintiff's RFC, because the ALJ ignored Plaintiff's non-severe impairments of Chiari I malformation and migraine headaches. ECF No. 16

---

[2] In her reply, Plaintiff clarified that her first alleged error is not that the ALJ deemed these two impairments "non-severe" at step two of the analysis. Instead, "[t]he error is that those impairments were not considered [at step four] when formulating the RFC." ECF No. 19 at 1.

3

at 6-7. *See* Social Security Ruling ("SSR") 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (holding that ALJ must consider the combined effect of all medically determinable impairments, whether severe or not severe).

The ALJ properly considered all of Plaintiff's impairments, including Chiari I malformation and headaches. In generally discussing Plaintiff's case, the ALJ noted that she considered Plaintiff's "complete medical history consistent with 20 CFR 416.912(d)." At step two, the ALJ found Plaintiff's migraines and "history of Chiari I decompression" both non-severe, and noted that Plaintiff was diagnosed with migraines, likely caused by stress, in December 2014. The ALJ discussed related CT scans and other records from 2014 through November 2016 that showed medication improving or controlling her periodic neurologic pain. R. 13.

In discussing Plaintiff's RFC, the ALJ thoroughly reviewed Plaintiff's subjective complaints from her testimony and her function reports, which included reports of severe headaches, among other difficulties. R. 15-17. Specifically discussing Plaintiff's Chiari I malformation, the ALJ recounted Plaintiff's history of neck and left arm pain beginning in September 2013, which led to a diagnosis of a Chiari I malformation after an MRI of Plaintiff's cervical spine. In November 2013, Plaintiff received cervical facet injections which improved her headaches, and she was referred to a neurologist for further evaluation of the Chiari I malformation. R. 17, 261. The ALJ summarized Plaintiff's 2014 visits with Christopher Covington, M.D., of Tulsa Spine and Specialty Hospital, who confirmed Plaintiff's Chiari I malformation diagnosis and performed successful decompression surgery on February 26, 2014. R. 17, 287-292. One month post-surgery, Plaintiff reported to Dr. Covington that her preoperative headache was resolved. R. 17, 284. The ALJ further discussed Dr. Covington's surgical records

for ulnar nerve release to treat carpal tunnel syndrome. R. 17-18, 276-282. The ALJ noted Plaintiff's June 5, 2014, visit with Dr. Covington, where Plaintiff stated decompression surgery was "definitely worthwhile" and that, although she still had some headaches, she felt "much better than she did preoperatively." R. 283. The ALJ also noted that, on October 27, 2014, Dr. Covington provided Plaintiff a work release to full duty with no restrictions. R. 275.

In assessing the RFC, the ALJ gave controlling weight to the opinion of Plaintiff's treating neurologist, Ralph W. Richter, M.D. In June 2015, Dr. Richter opined that Plaintiff's employment at that time as a dog adoption technician was aggravating her symptoms and that she needed to find employment "that would not involve pushing, pulling and heavy lifting" in order to help relieve her symptoms. Dr. Richter also thought Plaintiff would benefit from physical therapy. R. 314-315, 337-338. Dr. Richter summarized Plaintiff's medical history of severe chronic headaches, radicular left arm pain, thoracic outlet syndrome, past history of Chiari I malformation including a January 6, 2014, brain MRI showing increased signal surrounding the low-lying cerebellar tonsils with no acute process. R. 314, 337. The ALJ summarized the support for his RFC findings as follows:

> In sum, the above residual functional capacity assessment is supported by only minimal degenerative changes of the cervical spine (1F/4/11-12; 2F/19); good strength in both upper extremities (1F/1; 2F/20); normal physical examinations (2F/10/20; 3F/2-3); no weakness or atrophy (2F/7); pain being helped with medication (7F/3; 10F/3/17/20/24); she was released to regular duty in October 2014 (2F/1); normal CT's of the head (3F/18-19); CT of the cervical spine showed only minimal degenerative disc disease changes (3F/21); reports of exercising and doing housekeeping (10F/3); and an MRI of the sacrum found only mild osteoarthritic changes (10F).

R. 20.

The decision makes clear that the ALJ considered all of Plaintiff's impairments, including the Chiari I malformation and headaches, but found they did not result in any more severe

5

limitations than those outlined above.  The RFC is consistent with a treating physician's opinion and is supported by substantial evidence in the record.

Plaintiff's principal complaint is that the ALJ discussed Plaintiff's "history" of Chiari I malformation prior to the 2014 surgery and ignored certain records in 2015 indicating the condition still existed.  Plaintiff argues that "as far as the ALJ was concerned, the plaintiff did not have a [Chiari I malformation]" and that this "is the error since the evidence conclusively shows that a [Chiari I malformation] was present and affecting the plaintiff's cerebrospinal flow in 2015."  ECF No. 19 at 2.  Plaintiff relies on a CT scan, dated March 25, 2015, which showed "stable low-lying cerebellar tonsils consistent with Chiari I malformation" (R. 374), and an MRI scan, dated April 14, 2015, which showed "postoperative changes" in the form of "increased CSF signal surrounding the low-lying cerebellar tonsils."  *See* R. 367.

The Court rejects the argument that the ALJ somehow ignored these impairments or contrary medical records.  The cited medical records confirm that, in 2015, Plaintiff continued to have a Chiari I malformation that was surgically decompressed and that Plaintiff retains cerebellar tonsils.  However, the ALJ fully considered and discussed Plaintiff's post-operative medical records, impairments, and limitations, including consideration of any ongoing functional impact of the Chiari I malformation.  Nothing about the ALJ's decision indicates that she ignored the Chiari I malformation or any possible impact it had following the 2014 surgery, or that she ignored the two medical records cited by Plaintiff.  Instead, her reasoning indicates she considered all records but simply found they did not support additional work restrictions.  The two medical records cited by Plaintiff predate the alleged disability onset date, show minimal remaining functional impact from the Chiari I malformation, and do not overwhelm or contradict the other objective evidence discussed by the ALJ in assessing Plaintiff's RFC.  Notably, the April 2015 MRI scan notes: "No acute process, hemorrhage, or pathologic enhancement."  R. 367.  Further,

none of Plaintiff's treating physicians pursued further treatment for any increased CSF signal. The Court is not persuaded that the ALJ's use of the word "history" means she ignored or failed to consider the functional limitations caused by Plaintiff's non-severe impairments of Chiari I malformation and/or migraine headaches. Instead, Plaintiff is asking the court to re-weigh the functional impact caused by these impairments, which is not permitted. *See Hackett*, 395 F.3d at 1172.[3]

### B. ALJ's Consistency Analysis Is Proper and Supported by Substantial Evidence

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p. If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 416.929(c)(3). Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations

---

[3] In her motion, Plaintiff contends that any error was not harmless, because ignoring the Chiari I malformation could reduce an ability to handle and finger or result in the need for more breaks. ECF No. 16 at 6-7. The Court finds no error in the ALJ's RFC analysis and no reason to consider whether such error was harmless.

7

when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*[4]

The Court finds no error in the ALJ's consistency analysis. The ALJ dedicated a significant portion of her opinion to explaining reasons for finding Plaintiff's subjective complaints of disabling limitations inconsistent with other evidence in the record. R. 17-20. All of those reasons are linked to discrepancies between Plaintiff's subjective claims and contradictory information in the objective medical records. Regarding pain from headaches, Plaintiff directs the Court to her own subjective complaints of pain (R. 305, 364, 371, 463, 467, 470), with no objective or opinion evidence to support them, again impermissibly asking the Court to re-weigh the evidence. *See Hackett*, 395 F.3d at 1172. Further, Plaintiff does not challenge the opinion weight of Dr. Richter, which weakens her consistency argument. As discussed above, the ALJ gave controlling weight to Dr. Richter's opinion that "it would be important for [Plaintiff] to get a job that would not involve pushing, pulling and heavy lifting." R. 314, 337. Dr. Richter's opinion that Plaintiff could find alternate employment accommodating her impairments supports the ALJ's decision.

As noted above, the ALJ thoroughly discussed Plaintiff's subjective complaints regarding all of her impairments. Based on record evidence from Plaintiff's treating physicians, the ALJ

---

[4] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

concluded that Plaintiff's pain levels improved with medication and physical therapy, that she was able to perform "greater physical activities than reported," and despite the significant hand problems Plaintiff complained of, she did not seek treatment for those symptoms. R. 17. The ALJ made more than adequate consistency findings and linked those findings to substantial evidence in the record. *See Thompson v. Berryhill*, 685 F. App'x 659, 664 (10th Cir. 2017) (where ALJ evaluates a claimant's subjective complaints and explains evidence he relies on, "[n]othing more is required" for a consistency analysis). Accordingly, the ALJ committed no error in her consistency analysis of Plaintiff's subjective complaints, or in her conclusion that Plaintiff retained the RFC to perform a reduced range of sedentary work.

## IV. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 28th day of January, 2020.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**